[S. F. No. 794.   Department Two.—January 30, 1899.]

W. A. SWINNERTON, Appellant, v. OREGON PACIFIC RAILROAD COMPANY, Defendant.  SOUTHARD HOFFMAN et al., Respondents.

CONFLICTING JURISDICTION OF STATE AND FEDERAL COURTS—COMITY—PRIOR POSSESSION OF SUBJECT OF LITIGATION.—There is no common arbiter between the state and federal courts, and comity between them becomes a necessity and is a law which cannot be disregarded; and when a federal court is first in possession of the subject of the litigation, it must be left to determine when its possession and control of the property has ended, without interference from a state court.

ID.—EXECUTION OF DECREE OF FEDERAL COURT—CUSTODY OF CHECK BY CLERK—GARNISHMENT.—The claim of the United States district court that the possession of a check by its clerk payable to the receiver of a railroad appointed by a state court in Oregon, was in execution of its decree distributing the surplus proceeds of a steam vessel operated by such receiver, and which was taken from his custody and sold by order of said district court in admiralty proceedings, will preclude an effective garnishment of the check by a creditor of the railroad company, in a court of this state.

CXXIII. CAL.—27

Id.—Agency of Federal Court for Transmission of Fund.—In executing the intention of the United States district court to transfer the surplus funds, and the jurisdiction to determine conflicting claims respecting them to the court which appointed the receiver of the railroad in Oregon, the Oregon receiver and his proctor must be regarded as in effect officers or agents of the United States district court, for the transmission of the fund in execution of the decree.

Id.—Transfer of Property by Federal Court to Another State—Purpose of Transfer.—It seems that a federal court cannot rightfully transfer property from this state to another state for the mere purpose of giving to the courts of that state jurisdiction to distribute such property, thereby depriving the courts of this state of such jurisdiction; but a United States district court may, without violation of that principle, order the distribution of the surplus proceeds of a vessel taken under a libel in admiralty from the custody of a receiver of a state court in Oregon, to be made to such receiver as the only person having a vested interest therein.

Id.—Proceedings Supplementary to Execution—Orders Limiting Conduct of Receiver—Review upon Appeal.—Upon proceedings supplementary to execution in a superior court of this state, by which it was sought to reach a check in the possession of the clerk of the United States district court, orders limiting the conduct of the receiver appointed by the court to enforce a garnishment of the check made under execution. so as to confine his action to the taking of such proceedings, in the United States district court, as he might be advised, and not elsewhere, will be affirmed both upon the ground that reversal would be useless, it appearing that the fund in controversy had been actually transferred to Oregon by order of the district court prior to the decision upon appeal, and also upon the ground that comity required that there should be no interference with the jurisdiction of the district court over the disposition of the fund in its possession, made by its decree.

APPEAL from an order of the Superior Court of the City and County of San Francisco, made in proceedings supplementary to execution, limiting the action of its receiver to an application to a United States District Court. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Henry E. Monroe, John H. Dickinson, Walter J. Holmes, and Wal. J. Tuska, for Appellant.

Page, McCutchen & Eells, for Respondent.

TEMPLE, J.—On the fourth day of June, 1894, the appellant recovered a judgment in the superior court of San Francisco against the respondent, the Oregon Pacific Railroad Company, for $15,363.78 and costs.

Execution was issued thereon, proceedings supplementary to the execution instituted, and Southard Hoffman, who had been previously garnisheed under the execution, was cited to appear and be examined before Judge Seawell concerning any property, moneys, or credits in his hands, due, owing, or belonging to the Oregon Pacific Railroad Company.

Upon his examination, it appeared that the Oregon Pacific Railroad Company had been the owner of a steamship known as the "Willamette Valley"; that in the business of the railroad company this steamship plied between the port of Yaquina, Oregon, and the port of San Francisco; that upon one of her voyages to the port of San Francisco, and while in that port, she was seized by the United States marshal under admiralty process issued out of the district court of the United States for the northern district of California, upon a libel in admiralty filed therein against the steamship by R. D. Chandler. Such proceedings were had in this libel suit that the steamship was, by order of the court, duly and regularly sold, and the proceeds paid into the registry of the United States district court where the libel was filed. At the times of the libel proceedings, the sale of the steamship, and the further proceedings hereinafter mentioned, Southard Hoffman, the garnishee, was clerk of the United States district court, and he deposited the proceeds of that sale in the subtreasury at San Francisco. The ultimate issue of the Chandler libel suit was a decree in favor of Chandler and other libelants and intervenors against the steamship "Willamette Valley" for her condemnation, and payment to the libelants and intervenors of certain amounts found by the court to be due to each of them.

After all the moneys so found due to the libelants for whom the ship and her proceeds were held in custody by the United States district court were paid under its decree, there remained in the registry of the court, undisposed of, $23,950.85. Prior to the seizure of the steamship "Willamette Valley" in the libel suit, a receiver over the property of the Oregon Pacific Railroad

Company was appointed by the circuit court of Benton county, in the state of Oregon, and such receiver took possession of all the property of the corporation found in Oregon, including the steamship "Willamette Valley." In the latter part of the year 1895 a number of persons, among them the receiver appointed by the circuit court of Benton county, in the state of Oregon, claiming an interest in the remnants of the proceeds of the sale of the steamship, then still lying in the registry of the court, filed petitions in the United States district court, as provided by the rules and practice of the federal courts, praying for a distribution to them of this surplus or remnant. After hearing had upon these petitions the judge of the court made and gave a decree in the matter on the ninth day of June, 1896, dismissing all of the petitions except that of the Oregon receiver, and directed the clerk of his court to pay the moneys then in the registry of the court to that receiver, or to his proctor. In compliance with this decree, Southard Hoffman, as clerk of the United States district court, on the twenty-eighth day of September, 1896, prepared two checks, one for $19,918.29 in favor of Charles Clark, receiver of the Oregon Pacific Railroad Company, and one for $3,606.16 in favor of Charles Page, who was the proctor of the Oregon Pacific Railroad Company and of Charles Clark, the receiver.

These two checks Mr. Hoffman took to Judge Morrow, judge of the said United States district court, for his signature. The judge signed them and returned them to Mr. Hoffman for delivery and his signature, and Hoffman then signed them. Both of these checks were drawn on the United States subtreasury at San Francisco.

On or about the eighteenth day of June, 1896, Charles Page, as proctor for the Oregon Pacific Railroad Company and the Oregon receiver, instructed and requested Mr. Hoffman that when the decree became final he should prepare two checks, one for $19,918.29 in favor of the Oregon receiver, and one for $3,606.16 in Charles Page's favor, and that Mr. Hoffman should mail the larger check of the two to Charles Clark, the receiver, at Corvallis, Oregon, and inclose it in a letter previously written by Mr. Page to Mr. Clark, and which was left by Mr. Page with Mr. Hoffman for transmission through the mails.

The decree did not become final until September 28, 1896. Mr Hoffman, in pursuance of the instructions received from Mr. Page, did on the twenty-eighth day of September, 1896, after the same was signed, place the larger check inside of Mr. Page's letter, and put these in an envelope, which he sealed and addressed to Charles Clark, Corvallis, Oregon; but, before he could deposit the letter in the United States postoffice or a mailbox for delivery, and while the check so signed and countersigned and letter were in his possession, the sheriff levied a garnishment on Mr. Hoffman, under and by virtue of a writ of execution issued out of the superior court of the city and county of San Francisco, under the judgment recovered in this action. At the same time Hoffman was served with an order in supplementary proceedings to appear before Hon. J. M. Seawell and be examined, also an injunction and a subpoena *duces tecum* to bring into court the check drawn in favor of the foreign receiver.

Upon the hearing, Mr. Hoffman declined to produce the check, claiming to hold it in his possession in his official capacity as clerk of the district court of the United States, and that all his acts in relation to the placing of the check inside of Mr. Page's letter addressed to Clark, receiver, sealing the letter, addressing it, and the intended deposit thereof in the United States mail for transmission to Oregon, were official acts as such clerk. The superior court then made an order appointing one Forsyth receiver of the defendant's property, in which order it was recited that this check was in the possession and under the control of Southard Hoffman (apparently as an individual, and not as clerk), and that the check represented property of the Oregon Pacific Railroad Company. The order further authorized the receiver to collect all moneys, by suit or otherwise, and to demand and receive checks to which the defendant was entitled. Thereupon the plaintiff moved for an order upon Southard Hoffman directing him to deliver the check in his possession to Forsyth, the receiver appointed by that order. The court denied the motion.

Immediately upon obtaining this order, Forsyth, as receiver, brought an action in the superior court against Hoffman to compel him to surrender the check, and enjoining him from sending

it away. This fact having been brought to the attention of Judge Seawell, he, on the 23d of October, modified his previous order by setting aside all its provisions and recitals, except the order appointing Forsyth as receiver, and by limiting his powers to the taking of such proceedings as he might be advised, before the district court, and not elsewhere.

On the 30th of October, the court made still a new order slightly changing the modification heretofore set forth, and finally instructing the receiver to dismiss the suit which he had brought in the superior court, and to confine his proceedings to the court of which Hoffman was clerk. From these two orders this appeal is taken.

The respondent Hoffman was permitted by the court in Bank to supplement the record in this case by proof of the following facts, among others, to wit: That Forsyth, receiver, appeared in the district court of the United States and prayed that Hoffman be required to deliver to him the check in controversy; that the matter was litigated in that court, and that the United States district court rendered an opinion in which it was held that the check was in the custody of that court for the satisfaction of its own decree; that the attempt of the petitioner to have process issuing from a state court to control property in the possession of a federal court was void, and the petition of Forsyth, receiver, should be dismissed. Furthermore, that on the sixth day of February, 1897, Charles Clark, receiver of the Oregon Pacific Railroad Company, applied to him, Hoffman, as clerk, for delivery to him of the check in question, and that upon referring the matter to the district judge, the judge ordered him to deliver the check in accordance with the terms of the decree theretofore entered by the court, which order as clerk he obeyed, and the check in dispute is no longer in the possession of Hoffman, as clerk or otherwise.

Of course, appellant does not contend, and never has contended, that the fund can be reached while in custodia legis, or that the officers of the United States court can be interfered with in the discharge of their official duties. His contention was and is that the money had been as matter of law and fact distributed by the court and actually paid to the receiver appointed by the Oregon court, or to his proctor, and since such receiver

had no official standing in this state he could be regarded as receiving it only as the agent of the appellant's debtor, to wit, the Oregon Pacific Railroad Company; and, further, being assets of the debtor found in this state, it was subject to be adjudicated upon only by the courts of this state, and could not be sent or taken out of this state simply to give jurisdiction over it to the courts of another state.  The real answer to this contention is, that the United States district court intended to transfer the fund and the jurisdiction to determine conflicting claims to it to the receiver's court in Oregon, and in doing this the Oregon receiver and his proctor were in effect officers of the United States court in the execution of its decree in the transmission of the fund.

In my opinion, a federal court cannot rightfully transfer property from one state to another for the purpose of giving the courts of the state to which it is transferred jurisdiction to distribute such property under its decree to claimants, thereby depriving the courts of the state from which it is taken of such jurisdiction.  This would constitute a serious assault on the sovereignty of the state and the jurisdiction of its courts.  This was not done, however, in this case under the view of the matter entertained by the learned judge of the United States district court.

His views are fully explained in *Chandler v. Willamette Valley,* 76 Fed. Rep. 838, where the court considered and determined all the claims to the surplus then in the registry of that court. It is there stated that to entitle a claimant to the fund he must show a vested interest in or a lien upon the fund.  It is then shown that no claimant except the Oregon receiver has such a lien or interest.  It is then stated that the vessel was in the possession of the receiver when seized to satisfy the maritime liens, and it is said: "The fact that this court took possession of the vessel while she was engaged in commerce between the state of Oregon and the state of California, being operated as a part of the road of the corporation, did not affect or impair the prior equitable right of the state court of Oregon to the surplus proceeds.  The proceedings in admiralty in this court simply operated to suspend, not to divest, the action or control of that court as to the surplus."  Consequently, the surplus was restored to the jurisdiction of that court.

But, whatever may be the right of the United States district court to take the surplus money in its registry from the jurisdiction of our courts, it is apparent that such surplus cannot now be reached in any suit which can be instituted here by the receiver in the proceedings supplementary to execution. The property is not in this state, and such receiver would have no standing in Oregon. To reverse the orders appealed from here, therefore, would be followed by no consequence whatever. But, independently of this consideration, we think nothing should be done. The mere claim on the part of the federal court that Hoffman was still in possession of the money as an officer of that court should prevent our interference. Not conceding any superior authority in that court, except such as accrued to it from being first in possession of the subject of litigation, yet, since the two jurisdictions are independent, to avoid unseemly conflict, that court must be left to determine when its possession and control of the property has ended. We cannot apply here the doctrine of *Dunsmoor v. Furstenfeldt*, 88 Cal. 522, 22 Am. St. Rep. 331. As to co-ordinate courts of the state, there is a common appellate jurisdiction which can settle and compose all such questions. There is no such common arbiter between the state and federal courts. Comity, therefore, becomes a necessity. It is a law which must not be disregarded.

The orders appealed from are affirmed.

McFarland, J., and Henshaw, J., concurred.